## 25845. ALFORD *v.* ALFORD.

DECIDED MARCH 3, 1937.

*Yantis C. Mitchell, Bryan, Middlebrooks & Carter,* for plaintiff in error.

*Harold Hirsch, Marion`Smith, Welborn B. Cody,* contra.

MACINTYRE, J. Mrs. Martha B. Alford filed suit against Henry N. Alford for an alleged balance due under a contract entered into between plaintiff and defendant in lieu of alimony. The defendant filed an answer denying that he was indebted to the plaintiff in any sum, and setting out that the contract sued on showed that he had a right to make deductions from the payments for which plaintiff was suing, as he was supporting the two children. The case was tried before a judge of the municipal court, without a jury. He rendered judgment in favor of the plaintiff for $75. The case was appealed to the appellate division, which affirmed the judgment of the trial court. To this order the defendant excepted.

The plaintiff and the defendant had three minor children; they were living apart, and were not on speaking terms. They entered into a written contract, in lieu of alimony, whereby the husband was to pay the plaintiff $125 per month as alimony and support for herself and the minor children. Paragraph 2 of the contract was as follows: "As each of the minor children above named reaches the age of twenty-one years, or becomes self-supporting, or marries, the said monthly payment shall be reduced each month in the sum of twenty-five dollars per child." The contract also stated what reduction should be made in the payment of the $125 per month if any of the minor children should marry or become of age, or if the wife should die, or if the wife should remarry at any time, before or after the minor children should reach their majority. It also stated that the wife "shall have the custody of the said three children, with the understanding that Henry N. Alford shall have the privilege of visiting and seeing the said

children at any and all reasonable times, and shall have the privilege of having said children, or any one or more of them, live with him or any person designated by him during their vacation periods from school, or during any school holidays." The plaintiff contended that the defendant was indebted to her in the sum of $75 (by stipulation into the record), which amount had been deducted by the defendant at the rate of $37.50 per month for two months. The defendant admitted that these sums had been deducted from the payments, but contended that he had a right to deduct not only $37.50 per month, but, had he chosen, could have deducted $50 per month, because at that time two of the three children, for whom the contract provided for the payment of $25 a month each to the plaintiff, were being supported and sent to school by the defendant, and that the plaintiff was being put to no expense whatever for the support and education of the son, and that one of the daughters was being almost entirely supported and educated by the defendant, she spending only the week-ends with her mother.

Did Henry N. Alford Jr. and Martha Dolores Alford (two of the children) become self-supporting so as to relieve the defendant from the obligation of the contract with reference to them, and thus reduce the amount due under the contract? The father testified that he had deducted $37.50 per month for two months from the amount due the wife, this deduction being made on account of the fact that he had placed Henry N. Alford Jr. in school at Milledgeville, and was paying his expenses; that the daughter, Dolores, was staying with him a part of the time, so that she could conveniently attend North Fulton High School. He further testified: "The only agreement I had with Mrs. Alford is this written contract. . . I have never talked to her at all. . . Mrs. Alford and I never had any conference about this contract." It will be noted that the contract provided that the wife should have the custody of the three children, with the understanding that the husband should have the privilege of visiting and seeing them at any and all reasonable times, and the privilege of having said children or any one or more of them live with him, or any person designated by him, during their vacation periods from school or during any school holiday. To our minds this seems to indicate that it was anticipated that the children would be at the father's

expense part of the time, but no provision was made in the contract as to any deduction, by reason of the change of circumstances, from the amount due to the wife. It will be noted further that the contract provided that $125 per month was to be paid to the wife; no part was to be paid the children. Suppose, for the sake of the argument, that a grandparent, or kinsman, or good neighbor, or philanthropist, had sent the children to school or college and paid their board and tuition, would this have brought the children within the provision that they were self-supporting, as stated in the contract? We think not, nor do we think a like payment on the part of the father would have made the children "self-supporting" under the provisions of the contract. We are of the opinion that the word "self-supporting" as used in the contract was used in some such sense as if the children should be making their own living or running their own business and became manumitted, in which event the mother's obligation to support them would cease, and the father could reduce the $125 per month payments, $25 per month for such child, as stated in paragraph 2 of the contract.

The father testified, in part: "In April I paid $75 instead of $125, probably because I was short of money. As to telling her I thought I had overpaid—I have never talked to her at all; a lot of times I was behind with my payments and sometimes I was ahead with them. . . Mrs. Alford and I have never had any conversation about this contract. . . This record here [indicating] is charged in my book against her; the coal and light bills and things like that. I didn't pay them all the time, but occasionally may be the children would bring these bills in and ask me to send coal out." The mother was entitled to stand on her contract as written, which left it entirely to her discretion as to how the $125 payments should be expended. One child might be sick and require more than the others; one child might be in college and require more, etc. Under the contract the adjustment of this lump sum of $125 to the maintenance, support, and education of the various children was a matter for the mother. The father showed no agreement with the mother other than the written contract, and because he saw fit to buy coal and to pay other incidental items of expense for the benefit of his family and did it without any definite agreement, such items could not be cred-

ited on the $125 payments due his wife. If the husband is dissatisfied with the written contract which he entered into, he can not arbitrarily change it, nor can the wife arbitrarily alter it. The minds of both must meet. If for any reason the father wishes to do more for the children than the contract requires, he is to be commended, but we think he is at least bound by his written contract. Because occasionally he paid such house bills as water, light, coal, and the like, at the request of the children, and sometimes charged them against the $125 payments, and the wife had never protested (they not being on speaking terms), we do not think this brought about an implied or constructive agreement which would allow him to deduct from the $125 other money that he might have paid for the benefit of his children.

*Judgment affirmed. Broyles, C. J., and Guerry, J., concur.*